JOHN H. FARISH, DOING BUSINESS AS J. H. FARISH & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7091.   Promulgated July 29, 1927.

Embezzlement by an employee of moneys entrusted to him by his employer, occurring and continuing over a period of five or six years, and causing loss to his employer, does not warrant the allowance of the amount as a deductible loss to the employer in computing his taxable income in a subsequent year when the defalcation was first discovered.

*Chase Morsey, Esq.,* and *W. E. Diggs, Esq.,* for the petitioner.
*Thomas P. Dudley, Jr., Esq.,* for the respondent.

The Commissioner determined deficiencies in income tax of $539.99 for 1920, $1,962.23 for 1921, $279.22 for 1922, and an overassessment of $737.48 for 1919.

Petitioner was engaged in the real estate business and in acting as agent for others in renting their property, and collecting and paying over to them of such rentals. One of the petitioner's employees during five or six years immediately preceding 1921 embezzled moneys paid to petitioner by tenants and entrusted to him by petitioner. Such defalcation was not discovered until 1921 when petitioner was required to borrow money and restore the amount. The petitioner claims he sustained the loss occasioned by such embezzlement in 1921 when the embezzlement was discovered and the amount thereof was restored by him, and that same should be allowed as a deductible loss for that year.

The Commissioner disallowed same on the ground that the loss occurred in prior years in certain amounts during indeterminate periods, and therefore the total was not a deductible allowance in the year 1921.

### FINDINGS OF FACT.

The petitioner is a resident of St. Louis, Mo., where he is, and was during the years involved, engaged in the real estate business as an individual operating under the name of J. H. Farish & Co.

From 1911 to March 3, 1921, petitioner had in his employ a young man as cashier and bookkeeper. The petitioner's business was largely the collection of rents for his clients, and during 1918, 1919, 1920, and 1921 such collections amounted to approximately $100,000 a month. It was the duty of the cashier to see that the moneys collected from rentals were credited on the cash book to the owner of the particular piece of property from which such rents were collected and that moneys so collected were deposited in the Merchants Laclede Bank of St. Louis, to the credit of J. H. Farish & Co.

Petitioner carried his own personal account in the same bank in the name of J. H. Farish.

In making payments to clients of the rents collected, checks were drawn by the cashier on the J. H. Farish & Co. account, signed by petitioner and turned over to the cashier to be mailed out to the persons entitled thereto.

In March, 1921, it was discovered that the cashier was short in his accounts; that he had for a number of years been embezzling or misappropriating moneys that came into his hands by virtue of such collections. Various amounts of currency or money received in payment of rents were misappropriated by the cashier and such defalcation or shortage was concealed from petitioner by informing him that certain collections had been made and deposited when part, or all of same, had been misappropriated to the cashier's own use or embezzled by him.

The checks which he had petitioner sign to be sent to clients in payment for rents collected were temporarily withheld by the cashier until later rent collections came in, sufficient when deposited in bank, to pay the checks temporarily withheld without causing an overdraft at the bank. No checks of petitioner issued for clients were ever cashed and their proceeds embezzled or appropriated by the cashier to his own use. The checks themselves were not embezzled nor permanently withheld by the cashier.

His peculations began prior to 1916. When they were discovered on March 3, 1921, petitioner took prompt steps to ascertain the amount of defalcation and employed more than a dozen accountants to go over his books of account, canceled checks, etc., to determine the amount of the shortage. The defalcation was found to be $57,000. The cashier admitted the embezzlement. Of the total amount embezzled, $5,930.08 was all that petitioner ever succeeded in recovering from his cashier. For certain reasons unnecessary to be here set forth, petitioner did not prosecute the cashier nor was any civil suit brought against him to recover any portion of his defalcation. Some of the checks signed by petitioner to pay rents collected were held by the cashier for more than eighteen months before being mailed to the person entitled thereto. The amount of the defalcation was $57,000 on December 31, 1920, and the same in March, 1921, when petitioner paid the entire amount of same to his clients who held his checks totaling such amount for the payment of which there were no funds in petitioner's account at the bank.

In his determination the Commissioner allowed the petitioner a deduction of $10,000 in each of the years 1919 and 1920 as a loss resulting from the embezzlement of moneys by the cashier but allowed no deduction on that account for the year 1921 for the reason that the evidence showed that no funds were embezzled during that year.

LITTLETON: The evidence in this proceeding shows the misappropriation by petitioner's cashier of $57,000 of money coming into his hands as an employee and cashier of petitioner. It further shows his peculations extended over a period of years from 1915 to the end of 1920. It does not disclose what amount was taken by him in any particular year, but the evidence indicates that his defalcation was $57,000 on December 31, 1920, and was the same when discovered in March, 1921.

The rent collections of petitioner for his various clients were deposited in the Merchants Laclede Bank to the account of J. H. Farish & Co., the name under which John H. Farish operated his real estate business.

Such collections were thus commingled and converted by petitioner into a common fund, upon which he drew checks to his various clients for the rentals due them. As rentals were collected, petitioner became liable for same to his clients and when the $57,000 defalcation was discovered in 1921, he promptly made it good by borrowing sufficient money and paying the $57,000 of checks which his cashier had temporarily withheld and representing rentals which had been paid to petitioner and embezzled by the cashier.

There is no evidence showing that the cashier in 1921 embezzled or misapplied any of the moneys of petitioner or of petitioner's clients. The unpaid checks to clients of petitioner amounting to $57,000 were not embezzled. If they had been destroyed the defalcation of the cashier and the liability of petitioner to his clients would have remained the same.

The petitioner's loss occurred when the cashier took the money from rent collections, the amount of which petitioner was then obligated to pay to his clients. It was never the practice of petitioner or the cashier to deliver to clients the identical money or checks paid to petitioner as rents. Such moneys and checks were to be deposited to the account of J. H. Farish & Co. Petitioner then issued his personal checks to his clients on this account for their rents. His obligation to his clients arose when rents were collected and his loss was sustained when his assets were depleted by his cashier's misappropriation or embezzlement of rent collections.

There is no evidence from which the Board can find the amount or extent to which there was any embezzlement of money coming into petitioner's hands in any particular year. The appropriation to his own use of the $57,000 of rent money by the cashier, however such action may be designated, occurred prior to 1921 and no certain or definite amount is shown to have been taken or misapplied by him in any particular year.

The case of the *National Sash & Door Co.*, 5 B. T. A. 931, is cited and quoted in support of petitioner's claim, as follows:

With respect to the embezzlement question involved in this proceeding, the only question is whether the loss was sustained within the year 1918 or 1919. The petitioner claimed the deduction from gross income of the year 1919. *It had no knowledge that it had sustained any loss through embezzlement in the year 1918.*

The next paragraph of the Board's opinion in that case, however, states:

The evidence before us indicates that the embezzlement occurred in the year 1919. Upon the record it must be decided that the loss was sustained in the year 1919 and that the amount thereof is a legal deduction from gross income in that year.

The case of *United States* v. *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.*, unreported, involved the embezzlement of a large sum of money by the treasurer of the railroad company in years prior to 1909 and the embezzlement was discovered in the year 1909. The railroad company claimed a deduction of this amount from its gross income under the Corporation Excise Tax Act of 1909, which, like the Revenue Act of 1918, permitted a deduction on account of losses "actually sustained during the year." In the course of its opinion rendered February 23, 1916, the United States District Court for the Southern District of Ohio said:

The time of the discovery of a loss bears no relation to the date the loss was sustained. The loss was sustained when the theft occurred, although the defendant did not know at the time of the depletion of its assets. As each embezzlement occurred the defendant was poorer to the extent of it. It then sustained a loss. One of the definitions of "sustained" is "undergo". As each embezzlement occurred, the defendant underwent the loss of that much money.

The petitioner contends that although the cashier embezzled certain moneys coming into his hands during each of several years prior to 1921, he concealed the shortage and prevented the discovery thereof for the time being in the following manner. When cash or currency was paid to the petitioner by tenants the cashier embezzled a portion thereof in the year of payment and would have petitioner sign his personal checks to owners of property, the rent on which had been paid to petitioner, and such checks of *petitioner* would be withheld for the time being and not mailed to the owner of the property and as additional rents were paid the cashier would embezzle a portion thereof and have petitioner sign checks in payment thereof payable to the owner of the property different from the payee of the checks first withheld. The first checks made out and signed by petitioner, after sufficient collections to pay them

had been made and deposited, would then be mailed out by the cashier, and the later checks withheld until sufficient rents had been paid to the petitioner to provide a fund in his bank account sufficient to pay them. The amount of embezzlement by the cashier, according to the evidence, increased from year to year. By reason thereof it was necessary for the cashier in order to conceal his peculations to withhold the sending out of a larger amount of checks each time. When the petitioner discovered the shortage the cashier was holding various checks totaling $57,000 payable to one individual owner of certain property, the rental on which had been paid to petitioner from time to time. When petitioner discovered the shortage on the complaint of this particular property owner that he had not received checks for the rental of his property, the petitioner called his cashier's attention to the complaint and asked him to look into the matter and see what the trouble was. The cashier, without informing the petitioner at that particular time, mailed out the checks which petitioner had signed payable to this individual, the mailing of which the cashier had withheld, which resulted in an overdraft in petitioner's account at the Merchants Laclede Bank of St. Louis.. Thereupon the cashier confessed to the petitioner that he had embezzled the moneys collected from time to time over the years 1916 to 1920, inclusive. By reason of this situation counsel for petitioner argues that the amounts embezzled in 1918 were paid back by the cashier with the funds of other property owners subsequently collected and that the funds embezzled in 1919 were paid back with funds collected in 1920 and that in 1921 the petitioner was compelled to make good the embezzlement of $57,000 and that, therefore, the real embezzlement occurred and the loss was sustained in the year 1921 notwithstanding that no actual embezzlement took place in that year. We think this position is untenable for the reason that, as was stated in *United States* v. *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.*, *supra*, "As each embezzlement occurred the defendant was poorer to the extent of it" and petitioner's loss occurred when the embezzlement of funds by the cashier took place although the petitioner did not know of the shortage or defalcation until 1921 when he was compelled to borrow sufficient money to make good the shortage.

Section 214 (a) (6) of the Revenue Act of 1921 provides that "Losses allowed under paragraphs (4), (5), and (6) of this subdivision shall be deducted as of the taxable year in which sustained unless, in order to clearly reflect the income, the loss should, in the opinion of the Commissioner, be accounted for as of a different period." We think, however, that under the facts in this proceeding it is not necessary to allow the deduction of the amount of $57,000

embezzled over the years 1916 to 1920, inclusive, in the year 1921 in order clearly to reflect the income. The allocation by the Commissioner of the total amount embezzled as deductions in years prior to 1921 seems to us to clearly reflect income and to fulfill the intentment of the statute that the losses should be deducted in the year in which sustained.

Reviewed by the Board.

*Judgment will be entered for the respondent.*